UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACOB PATTERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-01430-JPH-MG |
| ) | |
| CHIAPPA FIREARMS, USA, LTD a ) | |
| Domestic For-Profit Corporation, ) | |
| CHIAPPA FIREARMS, S.R.I. an Italian ) | |
| Corporation, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANT CHIAPPA ITALY'S MOTION TO DISMISS**

Plaintiff, Jacob Patterson, alleges that his Chiappa handgun exploded in his hand, fracturing his right index finger. Dkt. 1 at 2. He sued both the gun's manufacturer—Chiappa Firearms, S.R.I. ("Chiappa Italy")—and its distributor—Chiappa Firearms, USA, Ltd. ("Chiappa USA"). *Id.* at 1–2. Chiappa Italy has filed a motion to dismiss for lack of personal jurisdiction. Dkt. [37]. For the reasons below, that motion is **GRANTED**.

I.
**Facts and Background**

Because Defendant has moved for dismissal under Federal Rule of Civil Procedure 12(b)(2), this Court accepts "as true all well-pleaded facts alleged in the complaint." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (quoting *Tamburo v. Dworkin,* 601 F.3d 693, 700 (7th Cir. 2010)).

In June 2018, Jacob Patterson bought a handgun—a Chiappa Rhino 30DS—online and had it delivered to Indy Arms Company in Indianapolis.

Dkt. 1 at 2.  On August 7, 2018, he picked up the gun from Indy Arms and test-fired it.  *Id.*  On the second shot, "the gun exploded in his hand," fracturing his right index finger.  *Id.*

The handgun was made by Chiappa Italy, dkt. 38 at 3, and distributed by Chiappa USA.  Dkt. 1 at 2.  Mr. Patterson is a citizen of Indiana and Chiappa Italy is an Italian corporation that "manufactures firearms for distribution worldwide."  *Id.* at 1–2.

In May 2020, Mr. Patterson brought this suit against Chiappa USA and Chiappa Italy, alleging negligence and strict liability.  Dkt. 1.  Chiappa Italy filed this motion to dismiss for lack of personal jurisdiction.  Dkt. 37.

## II.
## Applicable Law

Defendants may move under Federal Rule of Civil Procedure 12(b)(2) to dismiss claims for lack of personal jurisdiction.  When "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction."  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citations omitted).  "At this early stage in the litigation, and without the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction."  *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010).

## III.
## Analysis

Indiana law governs this personal jurisdiction analysis. Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Because Indiana extends personal jurisdiction to any basis "consistent with the Federal Due Process Clause," the sole issue is "whether the exercise of jurisdiction comports with the limits imposed by federal due process." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing Ind. Trial Rule 4.4(A)).

Due process allows courts to exercise personal jurisdiction only if "the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting "[t]he canonical decision" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1946)). The focus of the test is whether "the nature and extent of the defendant's relationship to the forum State" supports personal jurisdiction—either general or specific. *See id.* General jurisdiction applies when the defendant is "essentially at home" in the state and allows "any and all claims." *Id.* Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.*

Here, Chiappa Italy argues that the Court has neither general nor specific jurisdiction over it because it is an out-of-state corporation with no contacts to Indiana. Dkt. 38 at 1–2. Mr. Patterson responds that Chiappa

3

Italy placed its products into the "stream of commerce," so it knew that its products would end up in Indiana. Dkt. 39 at 1.

### A. General Jurisdiction

Chiappa Italy argues that the Court lacks general jurisdiction over it because it is not "essentially at home" in Indiana. Dkt. 38 at 6. Mr. Patterson does not respond to this argument. *See* dkt. 39.

A court may exercise general jurisdiction over corporations "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127. The "paradigm" places where a corporation is "essentially at home" are its place of incorporation and principal place of business. *Id.* at 127, 137. Here, Chiappa Italy is an Italian corporation with a principal place of business in Italy, and there are no allegations or evidence that it has similarly "continuous and systematic" contacts with Indiana. *See* dkt. 1; dkt. 39. Chiappa Italy is therefore not subject to general jurisdiction. *See Daimler AG*, 571 U.S. at 137–39; *uBid, Inc.*, 623 F.3d at 426.

### B. Specific Jurisdiction

Chiappa Italy argues that the Court lacks specific jurisdiction over it because there is no evidence that Chiappa Italy directed any activities toward Indiana or purposefully availed itself of the privilege of conducting business in Indiana. Dkt. 38 at 8. Mr. Patterson responds that the Court has personal jurisdiction over Chiappa Italy because it places its products into the stream of

4

commerce, expecting that they will be marketed and sold in Indiana. Dkt. 39 at 4.

To establish specific jurisdiction, a plaintiff must show "three essential requirements: (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from [or have been related to] the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (citations omitted); *Ford Motor Co.*, 141 S. Ct. at 1025. In *Ford Motor Company*, the Supreme Court addressed the requirement that the injury must "arise out of or relate to" the defendant's forum contacts. *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Bristol–Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)). Personal jurisdiction "attaches . . . when a company like Ford serves a market for a product in the forum State and the product malfunctions there." *Id.* at 1027 (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 295 (1980)). A company is "like Ford" when it "purposely avail[s] itself" of the forum state's market, instead of making a sale that is "simply an isolated occurrence." *Id.*

Here, Mr. Patterson alleges that Chiappa Italy placed the gun that injured him into the "stream of commerce" by selling it to a distributor, Chiappa USA, for eventual sale to consumers in the United States. Dkt. 39 at 4. Mr. Patterson then bought the gun from an online gun seller in Kentucky—

5

Bud's Gun Shop. *See id.* at 4–5. He then received the gun through a local Indiana gun dealer—Indy Arms. *See id.*; dkt. 39-4 at 3. He does not allege that Chiappa Italy does business directly with either Bud's Gun Shop or Indy Arms. *See id.*; dkt. 1. While American consumers may buy some products directly from Chiappa Italy's website, dkt. 39 at 5, firearms must be transferred through a dealer. The Chiappa Italy website has a "Dealer Locater" search function that returns 24 Indiana dealers within 100 miles of Indianapolis. *See id.* at 5–6; dkt. 39-5.

Mr. Patterson argues that Chiappa Italy—like Ford—made "deliberate and purposeful business and marketing decisions" that subject it to personal jurisdiction in Indiana. Dkt. 60 at 5. Chiappa Italy responds that it has not had the type of "systematic, continuous, and extensive direct contacts" that Ford had with the forum state. Dkt. 61 at 4. Instead, Chiappa Italy contends it "has no connection to Indiana at all." *Id.*

The "arise out of" test—the "first half" of the "arise out of or relate to" standard—"asks about causation." *Ford Motor Co.*, 141 S. Ct. at 1026. Mr. Patterson bought his handgun from Bud's Gun Shop, not from Chiappa Italy. Dkt. 39 at 4. While he alleges that Chiappa Italy's website lists Bud's as an available "Web Shop[ ]," dkt. 39-5 at 2, he does not allege that he saw or used that link, or that Chiappa Italy's contacts with Indiana otherwise motivated the gun purchase or caused his injury. *See* dkt. 1; dkt. 39; dkt. 39-7. Construed in Mr. Patterson's favor, the record does not show causation, so the "arise out

of" half of the standard cannot support personal jurisdiction. *See Ford Motor Co.*, 141 S. Ct. at 1025–26.

The "relate to" half of the standard is more lenient, "contemplat[ing] that some relationships will support jurisdiction without a causal showing." *Ford Motor Co.*, 141 S. Ct. 1026. But "[t]hat does not mean anything goes," because the standard must "adequately protect defendants foreign to the forum." *Id.* Here, holding that Mr. Patterson's injury "relate[s] to" Chiappa Italy's contacts with Indiana would remove that core protection. *See Felland*, 682 F.3d at 673 ("[P]otential defendants should have some control over—and certainly should not be surprised by—the jurisdictional consequences of their actions."). Chiappa Italy has not invaded Indiana's market "[b]y every means imaginable," as Ford did in Montana and Minnesota. *Id.* at 1028. There are no Indiana "billboards, TV and radio spots, print ads, and direct mail" from Chiappa Italy. *Id.* And Mr. Patterson has made no allegations that Chiappa Italy "works hard to foster ongoing connections" to its guns' owners. *Id.*

Instead, Chiappa Italy's closest contact to Indiana is that Hoosiers can buy some of its products through its website and use the website to find Indiana gun dealers who sell or can transfer firearms. That is a far cry from Ford's "36 dealerships in Montana and 84 in Minnesota." *Id.* Moreover, Mr. Patterson has not alleged that Chiappa Italy has a relationship with Indiana gun dealers similar to the relationship between a car manufacturer and its dealers, like in *Ford Motor Co., see* dkt. 1; dkt. 39. Indeed, Chiappa Italy's website merely gives contact information for Indiana gun dealers, with a

7

disclaimer that "Not all dealers carry our firearms in stock. Any dealer can order our products." Dkt. 39-6 at 1. Chiappa Italy's alleged contacts with Indiana are therefore "isolated or sporadic," which the Supreme Court has "long treated . . . differently from continuous ones." *Ford Motor Co.*, 141 S. Ct. at 1028 n.4. Such "random, fortuitous, or attenuated" contacts cannot support specific jurisdiction. *uBID, Inc.*, 623 F.3d at 426.

Citing the "stream of commerce" theory, Mr. Patterson argues that it's enough that Chiappa Italy expected that a product it manufactured would be sold in Indiana. Dkt. 39 at 4, 6. The Supreme Court "has twice failed to resolve . . . conclusively" whether a stream of commerce theory remains viable. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 576 (7th Cir. 2020). Regardless, Mr. Patterson cites no case endorsing a theory broad enough to support specific jurisdiction here. *See* dkt. 39 at 4, 6–7; *cf. Williams v. Romarm, SA*, 756 F.3d 777, 785 (7th Cir. 2014) ("[A] 'single isolated sale' from a distributor to a customer in the forum state has never been sufficient to establish minimum contacts between the manufacturer and the forum, under any stream of commerce interpretation."). He cites *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992), but the Seventh Circuit recently cited *Dehmlow* in explaining that "[i]f there is only an attenuated connection between [the] claims and the downstream sales . . . then the[ ] claims cannot be adjudicated in this forum," *J.S.T. Corp.*, 965 F.3d at 576. So *Dehmlow* does not support the unlimited stream of commerce theory as Mr. Patterson contends.

8

Moreover, in *Advance Tactical Ordinance Systems*, the Seventh Circuit explained that "several orders" sent to Indiana purchasers, "two misleading email blasts to a list that included Indiana residents," and "an interactive website available to residents of Indiana" were not enough to support personal jurisdiction. 751 F.3d at 801–03. Allowing those contacts—which were primarily online[1]—to establish specific jurisdiction would create "*de facto* universal jurisdiction*"* counter to the Supreme Court's consistent approach. *Id.* (collecting Supreme Court precedent).

Here, that concern is even greater because Mr. Patterson bought his handgun not from Chiappa Italy or Chiappa USA, but from Bud's Gun Shop through a local-dealer transfer. *See Williams*, 756 F.3d at 785 ("Even under the broadest stream-of-commerce theory, stream of commerce cannot mean 'unpredictable currents or eddies." (quoting *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal.*, 480 U.S. 102, 117 (1987) (Brennan, J., concurring)). And here, like in *Advanced Tactical*, 751 F.3d at 801, there is no evidence that Mr. Patterson saw anything on Chiappa Italy's website that targeted—or even referenced—Indiana. *See* dkt. 1; dkt. 39; dkt. 39-7.

In short, here there is no "tacit quid pro quo that makes litigation in [Indiana] reasonably foreseeable." *uBID, Inc.*, 623 F.3d at 430 (finding personal

---

[1] The Supreme Court also expressed hesitation about treating internet connections as meaningful contacts with a forum state. *Ford Motor Co.*, 141 S. Ct. at 1028 n.4; *see Walden v. Fiore*, 571 U.S. 277, 290 n.9 (2014) ("[T]his case does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular state."). The Court does not address these questions because Chiappa Italy's contacts are insufficient regardless.

jurisdiction because GoDaddy "thoroughly, deliberately, and successfully exploited the Illinois market" with "extensive national advertising" that "has successfully reached Illinois consumers"). So subjecting Chiappa Italy to personal jurisdiction in Indiana would prevent it from "conduct[ing] interstate business with[ ] the confidence that 'transactions in one context will not come back to haunt [it] unexpectedly in another.'" *Id.* at 429 (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997)). This case is thus beyond the "real limits" that "the phrase 'relate to' incorporates," *Ford Motor Co.*, 141 S.Ct. at 1026, and the Court does not have personal jurisdiction over Chiappa Italy.[2]

## IV.
## Conclusion

Chiappa Italy's motion to dismiss for lack of personal jurisdiction is **GRANTED**. Dkt. [37].[3] The **Clerk shall remove** Chiappa Firearms, S.R.I. from the docket.

**SO ORDERED.**

---

[2] Because Mr. Patterson's claims do not arise out of Chiappa Italy's connections to Indiana, the Court does not address the other requirements for exercising personal jurisdiction.

[3] Alternatively, Mr. Patterson requests jurisdictional discovery on the volume of Chiappa Italy's sales. Dkt. 39 at 8. He has not, however, explained why jurisdictional discovery is appropriate here or why Chiappa Italy's sales volume may affect the jurisdictional analysis, even if it could be determined how many of Chiappa Italy's firearms were eventually sold in Indiana. *See id.*; dkt. 60. "At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted. Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *C. States, Se. & Sw. Areas Pension Fund v. Reimer Exp. World Corp.*, 230 F.3d 934, 947 (7th Cir. 2000).

Date: 9/21/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Ryan L. Erdreich
PISCIOTTI LALLIS ERDREICH
rerdreich@pisciotti.com

Paul B. Genet
GENET & WALKER, P.A.
genetlaw@aol.com

Adam Spencer Ira
FROST BROWN TODD LLC (Indianapolis)
aira@fbtlaw.com

Anthony M. Pisciotti
PISCIOTTI LALLIS ERDREICH
apisciotti@pisciotti.com

Kevin C. Schiferl
FROST BROWN TODD LLC (Indianapolis)
kschiferl@fbtlaw.com

Michael Lynn Walker
GENET WALKER
mike@genetwalker.com